UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CAUSE NO. W-07-CR-022-ADA-(2) |
| | § | |
| PATRICK ESTELL JONES (2) | § | |

**MOTION FOR SENTENCE REDUCTION
UNDER SECTION 404 OF THE FIRST STEP ACT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALAN ALBRIGHT:

Patrick Estell Jones, through undersigned counsel, moves for a reduced sentence of time served, or no greater than 210 months, under Section 404 of the First Step Act of 2018.  In support, Jones shows as follows:

**I.**

**Background and Procedural History**

Mr. Jones is serving a 360-month sentence for possession with intent to distribute crack cocaine.  He has been incarcerated since January 31, 2007, and his current release date is August 9, 2030.  His guideline range at the time of his sentencing was 360-LIFE followed by five years of supervised release.  The guideline range he would face were he convicted today, with the same conduct and the same criminal history, would be 210-262 months followed by four years of supervised release, before any consideration of the factors under 18 U.S.C. § 3553(a).  Mr. Jones requests relief under the First Step Act of 2018.

The history of the case follows:

**A.  Arrest and Trial.**

Mr. Jones was arrested on January 31, 2007.  Officers went to the home he was living in, in search of someone else (Frances Whitlock) on an outstanding warrant.  In the apartment, Sharon Jones—to whom Mr. Jones had been married for only several months—was arrested after she was discovered to have crack paraphernalia.  Sharon Jones attempted to tamper with evidence of crack cocaine in her purse, but was prevented from doing so.  Thereafter, upon searching the house, officers found a total of 19.26 grams of powder cocaine, and 21.41 grams of crack cocaine.

At trial, Frances Whitlock testified that she was selling crack cocaine for Sharon Jones and Patrick Jones.  *See* Trial Transcript, dkt 85, at 239-240.  She testified that she got most of her drugs from Sharon Jones.  *Id.* at 250.  Sharon Jones testified, describing in detail how she and Patrick Jones together would purchase powder cocaine from her cousin, cook it, and sell it to neighbors in the apartment complex.  *Id.* at 171.  Sharon Jones admitted that she introduced Patrick to her cousin Dewayne Mitchell, because he could supply her and Patrick with cocaine to cook into powder.  Sharon Jones described how she and Jones together enlisted the help of Frances Whitlock.  *Id.* at 182-183.  She estimated the amount of cocaine that she and Jones would sell together.  *Id.* at 171-172.  Mr. Jones did not testify at trial.

Based on the testimony against him, including that of Ms. Whitlock and Mrs. Jones, the jury found Patrick Jones guilty of possession with intent to distribute at least 5 grams of crack cocaine.  In addition, the jury found that the residence of Sharon and Patrick Jones was within 1,000 feet of Temple Junior College.  The jury did not make a finding as to the drug weight involved in Mr. Jones's offense, finding only that the weight was greater than 5 grams.

At sentencing, based on the testimony of Sharon Jones, the PSR extrapolated an amount of crack cocaine.  Thus, Patrick Jones was held accountable not only for the 21.41 grams of crack

cocaine found alongside the 19.26 grams of powder cocaine, but for 425.1 grams of crack cocaine. This was not based on any drugs found, but on Sharon Jones' estimate that she and Patrick Jones received one-half ounce of powder cocaine and cooked it into crack before Thanksgiving of 2006 "every other day until their arrest on January 31, 2007." The sentencing Court did not unequivocally and explicitly rule on the weight of drugs in the offense. In ruling on the objections of Mr. Jones's attorney, the Court noted:

> Regarding the drug amount, [Jones] is charged with 425 grams, and the level where he finds himself is for 150 grams to 500 grams. So even if the Court decided the testimony of witnesses have exaggerated and it was only half as much, the offense level would still be the same.

*See United States v. Patrick Jones*, 6:07-cr-00022(2)-ADA DKT 86 at 9-10. Based on her testimony at trial and the government's motion to reduce her sentence, Sharon Jones received a term of three years' probation.[1] Frances Whitlock was not charged federally. Patrick Jones received a sentence of 360 months (30 years).

**B.  Post-conviction changes in the law.**

    **i.  Mr. Jones received no benefit from Amendment 709 – "related cases" – even though it applies to the facts of his case.**

At the time of his sentencing, Patrick Jones was assigned 39 criminal history points, a Criminal History Category VI, and Career Offender status based on two "sets of cases." While they weren't "related" under the guidelines definition in effect at his sentencing on July 25, 2007, the Sentencing Commission had already promulgated Amendment 709 as of May 1, 2007. Amendment 709 went into effect on November 1, 2007, three months and six days after Mr. Jones was sentenced.

---

[1] Jones later received a sentence of six months for violating the conditions of her probation by repeatedly using marijuana and cocaine.

The amendment changed the language in USSG § 4A1.2(a):

> Section 4A1.2(a) is amended in the heading by striking "Defined"; and by striking subdivision (2) . . . and inserting the following:
> (2)    If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. . . If there is no intervening arrest, prior sentences are counted separately unless . . . (B) the sentences were imposed on the same day.  Count any prior sentence covered by (A) or (B) as a single sentence. . .

*See* USSG Amendment 709, May 1, 2007.

Had this amendment—which went into effect slightly over three months after Mr. Jones was sentenced—been applied in his case, it would have reduced his criminal history points from 39 to 9.  It also would have defined his three sentences imposed on the same day for delivery of a controlled substance as a "single sentence."  Simply put, had he been sentenced three months later Mr. Jones would not have been a career offender.

The reason for the Commission's amendment to the Guidelines is illustrated by this very case: Mr. Jones had not been to prison on multiple separate occasions for selling drugs.  His sole Career Offender predicates were based on a *single arrest* for three separate, close-in-time instances of selling drugs to the same undercover officer.  *See* PSI at 61-63.

The Guideline amendment would also have changed his criminal history from Category VI to Category IV, and his guidelines *at that time* would have been 324-405 months (before the numerous reductions based on crack/powder cocaine disparities, discussed infra).

At sentencing, Mr. Jones's lawyer did not reference the pending Amendment 709 as a 3553(a) factor, nor does it appear that he tried to continue the sentencing, get the court to apply the amendment, or even ask the court to take it into consideration under 18 U.S.C. § 3553(a)(4)(A).

4

### ii. Mr. Jones received a single reduction in sentence in 2008 based on USSG amendments 706 and 711.

On November 1, 2007, the Sentencing Commission amended the "Crack" Guidelines, to reduce the disparity between powder and crack cocaine from 100:1 to 80:1. The Sentencing Commission had been urging Congressional action based on "the Commission's consistently held position that the 100-to-1 drug quantity ratio significantly undermines various congressional objections set forth in the Sentencing Reform Act and elsewhere." *See* USSG, Amendment 706, "Reason for Amendment." The Sentencing Commission further noted the emergent nature of the amendment by stating that:

> The Commission's recommendation and strong desire for prompt legislative action notwithstanding, the problems associated with the 100-to-1 drug quantity ratio are so urgent and compelling that this amendment is promulgated as an interim measure to alleviate some of those problems. . .
>
> Having concluded once again that the 100-to-1 drug quantity ratio should be modified, the Commission recognizes that establishing federal cocaine sentencing policy ultimately is Congress's prerogative. Accordingly, the Commission tailored the amendment to fit within the existing statutory penalty scheme by assigning base offense levels that provide guideline ranges that include the statutory mandatory minimum penalties for crack cocaine offenses. The Commission, however, views the amendment only as an interim solution to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to those problems. Any comprehensive solution to the 100-to-1 drug quantity ratio requires appropriate legislative action by Congress.

*See id.*

On October 14, 2008, the Court reduced Mr. Jones's sentence from 360 months to 324 months. The Court did so after considering the 3553(a) factors in this case. The Court held that "[a]s the Court previously imposed a sentence at the bottom of the guideline range, the same will be selected in imposition of Defendant's new sentence." *See* Docket # 103, Order Reducing Sentence Re: Crack Cocaine Offense. This was the only reduction in sentence Mr. Jones received.

5

### iii.   Mr. Jones received no reduction under the 2010 Fair Sentencing Act.

In 2010, the Congress passed the Fair Sentencing Act.  This was, in part, based on the Sentencing Commission's "strong desire for prompt legislative action" based on "urgent and compelling" problems with crack cocaine sentencing.  Mr. Jones did not benefit from the Fair Sentencing Act because, at the time, it was deemed not to be retroactive to defendants who had been sentenced before its enactment.  *See Dorsey v. United States*, 567 U.S. 260 (2012).

Because the Fair Sentencing Act was not retroactive to Mr. Jones, the Court did not have statutory authority to reduce Mr. Jones's sentence.

### iv.   Mr. Jones received no reduction under Amendment 750, following the Fair Sentencing Act.

In November of 2011, the Sentencing Commission's "Amendment 750" went into effect. Under Amendment 750, defendants sentenced under both the post-2007 drug guidelines, and those sentenced before, received retroactive reduction of their sentences under the new "18:1" ratio.

On February 24, 2012, Mr. Jones filed a *pro se* motion to reduce his sentence in the Court's "discretions and mercy," based on the Fair Sentencing Act and the USSC's retroactive amendment of the sentencing guidelines.  *See* Document # 164.  On April 4, 2012, the Court denied the motion, concluding correctly (as a matter of law) that "Amendment 750" did not have an effect on Mr. Jones' applicable guideline range.

Unlike now, his Career Offender precluded the Court, at that time, from reducing Mr. Jones's sentence.

### v.   Mr. Jones received no reduction under the Sentencing Commission's 2014 Amendment 782 "drug minus two" reduction.

On November 1, 2014, the Sentencing Commission passed a broad two-level reduction of all drug guidelines and made that reduction retroactive.  Mr. Jones again filed a pro se motion to

reduce sentence under Amendment 782. The Court again found it did not have authority to reduce sentence because "Defendant's sentence is within the amended guideline range." Although the Court did not further explain its reasoning, this ruling was necessarily premised on Mr. Jones's status as a "career offender."

Mr. Jones's *pro se* motion was unable to articulate that his Career Offender status was based on an antiquated interpretation of his prior arrests that ceased to be in effect a mere three months after his sentencing. He was unable to articulate the fact that, had he been sentenced after the November 1, 2007 amendment regarding prior criminal history, he would have not 39, but rather 8 criminal history points. He would not have been in Criminal History Category VI, but rather in Criminal History Category IV. And perhaps most importantly, he would not have been a Career Offender, meaning that he would have been eligible for the retroactive guideline reduction.

> **vi.    Mr. Jones received no relief via the clemency review that President Obama began, but did not finish.**

Given the length of his sentence, the law firm Sidley Austin, LLP provided pro bono legal assistance to Mr. Jones beginning in 2016, and filed a clemency petition on October 13, 2016. *See* Exhibit 1, Letter of Alison Looman in Support of Reduction. In their petition, his attorneys sought commutation of Mr. Jones's sentence based on the relevant clemency factors:

(1) Subsequent reductions would have caused Mr. Jones to receive a substantially lower sentence;

(2) He was a non-violent offender;

(3) He was a low-level offender;

(4) He had no significant ties to large-scale criminal organizations, gangs, or cartels;

(5)  He had served approximately 10 years;

(6)  He did not have significant criminal history; and

(7)  He had demonstrated good conduct in prison.

*See* Exhibit 2, 2016 Clemency Petition.

The petition correctly noted that Mr. Jones's criminal history points would be substantially lower, based upon Amendment 709, which changed the scoring provisions, as discussed above. *Id.*  The petition also noted the fact that many crack offenders receive below-guidelines sentences due to continued determinations by sentencing courts around the country (in nearly 40% of crack cases) that the crack cocaine guidelines are excessive.  *Id.*

As his attorney at the time notes in her letter in support, she found his case noteworthy for several reasons.  *See* Exhibit 1.  She first notes his mitigated history: the product of incest, Mr. Jones raised himself on the streets.  Next, she notes the stark effect that his non-violent crimes committed before the age of 18 had on his sentence.  Finally, she notes that the enhancement for being within 1,000 feet of a school zone was based on his apartment's proximity to Temple Junior College, and there was no evidence that Patrick ever targeted or sold to children or students. Finally, attorney Looman expresses that she felt surprised that Jones's relevant conduct could enhance the quantity of crack cocaine from 21 grams to 425 grams.  *See* Exhibit 1.

Ms. Looman finally discusses the clemency process: she believes that the petition was not reviewed prior to the change in Administration, and thus never had a chance at all.  She describes her hope that the First Step Act will provide some relief that her clemency petition was unable to. *See* Exhibit 1.

## II.

## Mr. Jones Is Eligible for a Reduced Sentence Under the First Step Act.

Jones is eligible for a sentence reduction under First Step Act of 2018 (Act).[2]  Section 404

of the Act permits the Court to retroactively apply the statutory penalties for cocaine base, which

were reduced by the Fair Sentencing Act of 2010 (FSA).  *See* First Step Act, 115 Pub. L. 391, §

404, 132 Stat. 5194 (enacted Dec. 21, 2018).  Specifically, the Act allows a court to reduce the

sentence for a "covered offense"—" a violation of a Federal criminal statute, the statutory penalties

for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–

220; 124 Stat. 2372), that was committed before August 3, 2010." § 404(a), (b). Jones's offense is

a "covered offense" under Section 404. His offense was committed before August 3, 2010, and the

statutory penalties for his offense under § 841(b)(1)(A) were modified by Section 2 of the Fair

---

[2] SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act, 115 Pub. L. 391, § 404, 132 Stat. 5194 (2018).

Sentencing Act.[3]  The exclusions under Section 404(c) do not apply to him because his sentence was not already reduced in accordance with the FSA and the Court has not denied a motion to reduce his sentence under the Act.

When the First Step Act authorizes the retroactive application of the FSA, courts look to the quantity of drugs alleged in the indictment and found by a jury beyond a reasonable doubt to determine the current statutory penalties.  *See Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000); *Alleyne v. United States*, 570 U.S. 99, 113–14 (2013); *Dodd*, 372 F.Supp.3d 795, 797-798 (S.D. Iowa April 9, 2019) ("Both *Apprendi* and *Alleyne* are binding on this Court for sentencings held today.  That these procedural rules do not trigger a right to relief retroactively on collateral review, …, is distinct from whether they apply to proceedings independently authorized under the First Step Act") (cleaned up); *see also See* Order, *Jones*, 6:96-cr-00111-ADA, dkt 384 (W.D. TX September 26, 2019); Order, *Roy Brown*, 6:94-cr-00061-ADA, dkt 229 (W.D. TX September 26, 2019); Order, *Johnson*, 6:07-cr-00150-ADA, dkt 39 (W.D. TX September 26, 2019); Order, *Rhodes,* 6:06-cr-00111-ADA, dkt 93 (W.D. TX September 26, 2019); Order, *Peters*, 6:09-cr-00244-ADA, dkt 49 (W.D. TX September 26, 2019); Order, *Kemper*, 5:92-cr-0013-FB DKT 132 (W.D. TX July 24, 2019).

Count One of Jones's indictment alleged a quantity of 5 grams or more of "crack" cocaine, and the jury found only that quantity.  Thus, applying the FSA retroactively to Jones's case means he is no longer subject to the statutory penalties under § 841(b)(1)(B), but instead is subject to the

---

[3] *See* Order, *United States v. Cedric Jones*, 6:96-cr-00111-ADA DKT 384 (W.D. TX September 26, 2019); Order, *United States v. Roy Brown*, 6:94-cr-00061-ADA DKT 229 (W.D. TX September 26, 2019); Order, *United States v. Tremaine Johnson*, 6:07-cr-00150-ADA DKT 39 (W.D. TX September 26, 2019); Order, *United States v. Demarcus Rhodes,* 6:06-cr-00111-ADA DKT 93 (W.D. TX September 26, 2019); Order, *United States v. Vernon Peters*, 6:09-cr-00244-ADA DKT 49 (W.D. TX September 26, 2019); Order, *United States v. Kemper*, 5:92-cr-0013-FB DKT 132 (W.D. TX July 24, 2019).

penalties set forth in § 841(b)(1)(C).  *See* Order Granting Defendant's Motion for Resentencing, *United States v. Green*, No. 98-cr-5067, at 4 (W.D. Wash. Apr. 24, 2019), ECF No. 194 (statutory range reduced from § 841(b)(1)(A) to § 841(b)(1)(C) because jury made no finding as to quantity). Consequently, Jones's statutory sentencing range is reduced to zero to 40 years. *See* § 841(b)(1)(C) & § 860(a).  The Guidelines are thus reduced to 262-327 months.

As explained below, a downward variance to 210 months or less is appropriate in this case. *See* Decision and Order, *United States v. Moreno*, No. 07-00101, p. 6 (E.D. Wis. Apr. 12, 2019), ECF No. 43 ("First Step Act motions are not limited by any reductions in the guideline range.").

In September, this court reduced a life sentence to one of time served (which was approximately 23 years).  *See United States v. Cedric Jones*, 6:96-cr-00111-ADA DKT 384 (W.D. TX September 26, 2019).   The government argued that the defendant had not accepted responsibility for his actions, and was "not a small-time crack dealer."  *Id.* at *4.  Based upon extrapolation from a confidential informant's statement, the original sentencing Court held the defendant in that case accountable for 13.76 kilograms of crack cocaine, as well as a leader of the conspiracy.  *Id.* at *2.  This Court held that the defendant was eligible because section 404(a) of the First Step Act bases eligibility upon the statute of conviction, rather than the defendant's offense conduct.  *Id.* at *6.  Noting positive references from Bureau of Prisons' staff, this Court concluded that the defendant had been rehabilitated, and exercised its discretion to reduce the defendant's sentence to time served. *Id.* at *7.

Other courts have also significantly reduced sentences, even where the underlying conduct was far greater than anything alleged or proven in Mr. Patrick Jones's case.  *See United States v. Pride*, 2019 WL 2435685 (W.D. Va. June 11, 2019).  In *Pride*, the court reduced a sentence from life to 240 months, in spite of the fact that the defendant had an unchanged guideline range.  *Id.* at

*6.  Like Mr. Jones, the defendant in *Pride* went to trial, and like Mr. Jones, he was sentenced while the 2007 guidelines were still in effect.  *Id.* at *2.  Unlike Mr. Jones, the defendant had a guideline range of life, and was sentenced to life.  *Id.*  Additionally, the defendant in *Pride* was indicted the following year in a separate case, and sentenced to 360 months.  *Id.* at *2-3.  Mr. Jones has no such aggravating factors in his case.  In *Pride*, evaluating the defendant's motion for resentencing, the Court concluded that since the statutory range was predicated upon the drug weight, *Apprendi* and *Alleyne* applied at resentencing.  *Id.* at *6.  The Court chose to rely upon the indicted drug weight, not the unindicted weight indicated in the PSR.  *Id.*  As a result, the Court reduced the defendant's sentences from life and 360 months respectively to 240 months on each count, to run concurrently.  *Id.*

Courts have also found that it is appropriate under the § 3553(a) factors to consider what the defendant's current guideline range would be.  *See United States v. Jerome Martin*, 2019 WL 2571148 (E.D.N.Y. June 20, 2019).  In *Martin*, the defendant pled to an indictment for distributing fifty grams or more of cocaine base, but stipulated that he would be sentenced for a drug quantity of at least 1.5 kilograms.  *Id.* at *1.  At the time the defendant was sentenced, his guideline range was 360 months to life.  *Id.* at *4.  Without resolving whether the defendant was in criminal history category III or IV, since the guideline range was the same under either, the judge sentenced the defendant to 240 months.  *Id.*  If sentenced today, the defendant would have a guideline range of 210 to 262 months or 235 to 293 months.  *Id.*  The Court granted the defendant's motion for sentence reduction over the government's objection that doing so would cause unwarranted sentencing disparities.  *Id.*  The Court imposed a sentence of 180 months, explicitly considering factors under 18 U.S.C. § 3553(a) and congressional intent in passing the First Step Act. *Id.* at *5.

Even if a defendant's guideline range remains unchanged, a court may impose a reduced sentence under the First Step Act. *See United States v. Norman*, 2019 WL 3296830 (W.D. Mich. July 23, 2019).  In *Norman*, even though a CI provided a written affidavit indicating that he had purchased over 2 kilograms of cocaine from the defendant, the sentencing court only attributed 103.18 grams of crack to the defendant.  *Id.* at *2.  Like Mr. Jones, the defendant in *Norman* sought to reduce his sentence under Amendments 750 and 782, and was denied both times.  *Id.* at *3. Unlike Mr. Jones, whose guidelines do change, the defendant in *Norman*'s guidelines remained unchanged due to his career offender status.  *Id.* at *4.  While the defendant's guidelines would have dropped from 121 to 151 months to 70 to 87 months without classification as a career offender, his guidelines remained at 235 to 293 months because of this classification.  *Id.*  The Court declined to conduct a plenary resentencing or continue intervening changes in law.  *Id.* at *1.  Nonetheless, the Court reduced the defendant's sentence to 120 months.  *Id.* at *6.

## III.

### A Sentence of 210 Months or Less Is Sufficient, But Not Greater Than Necessary, Based upon Patrick Jones's Characteristics, the Seriousness of His Offense, and the Sentences of Defendants Who Have Committed Similar Offenses.

#### A.  The Court Should Exercise Its Discretion to Reduce Jones's 30-year Sentence.

Mr. Jones asks this Court to exercise its discretion for the following reasons:

(a) the Guidelines Amendments demonstrate that his sentence was greater than necessary under 18 U.S.C. § 3553(a);

(b) Mr. Jones's conduct in prison has been almost wholly favorable—he has obtained education, has had only two disciplinary write-ups in over ten years of custody, and has a solid work history;

(c) Mr. Jones has worked to pay his entire fine;

13

(d) Mr. Jones is clean and sober.

Earlier this year, the Fifth Circuit held that the First Step Act does not require a court to conduct plenary resentencing. *See Hegwood v. United States*, 934 F.3d 414, 415 (5th Cir. 2019). Instead, courts reviewing motions for sentence reductions under the First Step Act are required to consider changes to the statutory range directly resulting from the Fair Sentencing Act and the factors considered by sentencing courts under 18 U.S.C. 3553(a). *Id.* at 418.

This Court is not required to recalculate Mr. Jones's sentence in light of Amendment 709 to the United States Sentencing Guidelines, which would reduce Mr. Jones's criminal history by two categories. This fact does not, however, preclude this Court from reducing Mr. Jones's sentence. This Court does not need to recalculate Mr. Jones's guidelines to impose a reduced sentence. The Court can consider the ample evidence that Mr. Jones's sentence is greater than necessary when considering the factors listed in 18 U.S.C. 3553(a).

If Mr. Jones were sentenced today, his guideline range would be 210-262 months.[4] Even if the Court were to consider the current relevant Career Offender Guideline range, the First Step Act reduces his guidelines to 262-327. At the time Mr. Jones's sentence was imposed, his guideline range was calculated at 360-LIFE, though he was resentenced in 2008 due to the Commission's first reduction in the crack Guidelines, which lowered his Jones's guidelines to 324-405 months. The passage of the Fair Sentencing Act, the First Step Act, and the numerous previous reductions that Mr. Jones was not eligible for—until Congress passed the First Step Act—demonstrate that Mr. Jones's 30-year sentence is excessive.

---

[4] Based upon an offense level 34, criminal history category IV – *See* USSG § 2D1.1; § 4B1.2; *see also* Exhibit 1, Petition for Clemency, Executive Summary at pp. 4-6.

Jones has completed educational courses while in custody, and worked to earn his GED. *See* Exhibit 3, Inmate Education Transcript.  Jones has worked at Unicor making industry shirts, at his most recent placement at Oakdale FCI, a low-security facility.  *See* Exhibit 4, Summary Progress Report. Jones has received very favorable evaluations for his work.  *See* Exhibit 5, Unicor Work Performance Evaluation Record.  He has consistently achieved the highest ratings ("much better than average") for safety, personal conduct, punctuality/productivity, and compliance with work standards.  *See* Ex. 5.  When he has not received the highest rating, he has nonetheless almost always been evaluated as "better than average."  He has never once in two years been deemed worse than average or received a negative evaluation.  *Id.*

Based on his consistent hard work in the decade he has been in prison, Mr. Jones has paid off his entire fine to the Court.  *See* Exhibit 6, Inmate Financial Responsibility Statement.

Mr. Jones writes the Court as well.  *See* Exhibit 7, Letter of Patrick Jones.  He remains remorseful and accepting of responsibility.  *See* Document # 164.  Moreover, he notes the key to his rehabilitation: he is "hard working, free and clean of drugs and a lot smarter now, with a balanced outlook on life."  *See* Exhibit 7.  His primary goal in requesting a sentencing reduction is to try and be there for his son, who he has not seen or been able to provide support for since his son was three years old.  *Id.*

Jones has completed a reentry plan, and his sister Debra Canady remains supportive and willing to take him into her home in Killeen, TX, upon his release.  *See* Exhibit 1, Clemency Petition; Exhibit 4, Summary Reentry Plan; Exhibit 8, Letter of Debra Canady in Support of Clemency Petition; Exhibit 9, Letter of Claudette Crumpton in Support of Clemency Petition.

With the benefit of hindsight, Congress has passed two acts since 2008, and the United States Sentencing Commission has amended its Sentencing Guidelines three times.  However, Mr.

15

Jones's sentence has remained unaltered by any of these changes, until the Congress passed the First Step Act.

The majority of defendants who have received reduced sentences under the First Step Act are similarly situated to Mr. Jones. As of July 31, 2019, 1,674 defendants had received reduced sentences.  UNITED STATES SENTENCING COMMISSION, FIRST STEP ACT OF 2018 RESENTENCING PROVISIONS RETROACTIVITY REPORT (2019).[5]  Of those defendants, 57% were classified as career offenders at the time of sentencing, and 64.9% fell within Criminal History Category VI.[6]  In spite of this criminal history, the average eligible defendant has received a 26.8% reduction from their current sentence.[7]

Like most defendants who have received sentence reductions under the First Step Act, Mr. Jones is a non-violent offender.  His criminal history stems from two arrests: a burglary spree when he was aged 17, and an arrest following three separate sales—within a period of two weeks—of a small quantity of drugs to the same undercover officer.[8]  Mr. Jones has never been charged with illegal possession of a firearm or with a crime of violence.  During the 12 years he has been incarcerated, Mr. Jones has only received two incident reports, both for low-severity infractions. *See* Exhibit 3, Summary Reentry Plan – Progress Report.

**B.  A sentence of anything greater than 210 months is greater than necessary to reflect the seriousness of Mr. Jones's offense and deter future criminal conduct.**

Mr. Jones would not be classified as a Career Offender under the current sentencing guidelines, and would not have been if he had been sentenced approximately three months later

---

[5] Available online at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/retroactivity-analyses/first-step-act/20190903-First-Step-Act-Retro.pdf, retrieved October 28, 2019.
[6] *Id.* at 8.
[7] *Id.* at 9.
[8] PSR at ¶¶ 52-63.

than he was.  Mr. Jones lacks the criminal history required under the current sentencing guidelines to be classified as a Career Offender.  This Court is neither required to re-calculate Mr. Jones's guidelines nor change his classification as a Career Offender.  However, indicia beyond the mere change in guideline classification also support the argument that Mr. Jones is not the type of offender contemplated by the sentencing commission's career offender enhancement.

Unlike many within the career offender category, Mr. Jones has no history of violence.  Within the career offender category, people with a history of only drug offenses (as opposed to only violent offenses) are *least likely* to recidivate, and are those who do recidivate are able to avoid recidivism for a longer time on average.[9]  Out of those in this "drug only" category of offenders, Mr. Jones is among the least dangerous.  Mr. Jones is less likely than most similarly classified offenders to commit future offenses, and especially *serious* future offenses. *See Id.*

The Sentencing Commission has indicated the belief that non-violent drug offenders like Mr. Jones are different from others within the class of "career offenders," and that a sentence similar to defendants with violent criminal histories would be excessive:

> In light of this data, the Commission concluded that the significant enhancements provided by the career offender directive, and the related career offender guideline, are most appropriately reserved for those offenders who have committed a felony "crime of violence."  The normal operation of Chapter Four's criminal history provisions adequately accounts for likelihood of recidivism and future criminal behavior of those offenders who are currently deemed to be career offenders, but who have not committed an instant or prior offense that is a "crime of violence."  The Commission recommends that Congress amend the career offender directive at 28 U.S.C. § 994(h) to more effectively differentiate between career offenders with different types of criminal records by requiring that an offender have committed a felony "crime of violence" either as the instant offense of conviction or as one of the required predicate convictions.

---

[9] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/RG-career-offender-rpt.pdf.
Retrieved October 28, 2019.

United States Sentencing Commission, Report to Congress: Career Offender Sentencing Guideline Enhancements, August 2016, page 44.[10]   The career offender classification has not been restricted to offenders who have a conviction of a crime of violence. However, the United States Sentencing Commission has found that there was no meaningful difference between "drugs only" career offenders like Mr. Jones and the average defendant in a drug case.[11]

Courts have signaled an endorsement of this position: they sentence lower and grant greater variances from the guideline range for "drugs only" career offenders.  For example, in 2016, career offenders with no violent criminal history received an average sentence of 134 months, although their average guideline minimum was 131 months before applying the enhancement.[12]   After application of the career offender enhancement, the bottom of the guideline was 207 months on average.[13]   By comparison, "mixed career offenders" were sentenced on average to 145 months of a 212 month average guideline minimum, and "violent only career offenders" were sentenced on average to 179 months of a 209 month guideline minimum.[14]   The average sentence for a "drugs only career offender" was 32.7% below guidelines, as opposed an average 29.6% downward departure for "mixed career offenders" and a 9.9% downward departure for "violent only career offenders."[15]

Similarly, data from the retroactive application of the Fair Sentencing Act suggests that Mr. Jones's current sentence is greater than necessary to protect the public and deter future criminal

---

[10] Available online at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf. Retrieved October 28, 2019.
[11] *See Id.* at 27.
[12] *Id.* at 35.
[13] *Id.* at 34.
[14] *Id.*
[15] *Id.*

activity.   The United States Sentencing Commission found that recidivism rates were nearly identical among offenders who were released early by the Fair Sentencing Act and those who served the full duration of their original sentence.   UNITED STATES SENTENCING COMMISSION, RECIDIVISM AMONG FEDERAL OFFENDERS RECEIVING RETROACTIVE SENTENCE REDUCTIONS: THE 2011 FAIR SENTENCING ACT GUIDELINE AMENDMENT (2018), page 1.[16]  Additionally, the time to recidivism was nearly identical among offenders who did recidivate, regardless of whether the defendants received relief or not.[17]  It is unlikely that granting a reduction to Mr. Jones under the Fair Sentencing Act would increase his chances of recidivism.

Even after the Fair Sentencing Act, courts so regularly sentence defendants below the guidelines for crack distribution offenses that the *average* sentence for crack offenses is below the guideline minimum.[18]  Although the average guideline minimum for offenses involving crack cocaine was 102 months during Fiscal Year 2018, the average sentence imposed was only 78 months.[19]  This appears to reflect a general belief among judges that a guideline sentence for crack distribution under current guidelines is still greater than necessary, even after two acts of Congress, and three sentencing guideline amendments substantially lowered the guideline range.

### C.  Reducing Mr. Jones's sentence would help promote consistency of sentences between similarly situated defendants.

Imposing a sentence of 210 months or lower, below or at the bottom of contemporary guidelines for defendants with similar criminal history and conduct to Mr. Jones, would not create

---

[16] Available online at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180328_Recidivism_FSA-Retroactivity.pdf. Retrieved October 28, 2019.
[17] *Id.* at 3.
[18] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Crack_Cocaine_FY18.pdf. Retrieved October 28, 2019.
[19] *Id.*

a "windfall" for Mr. Jones, and would not give him an anomalous sentence.  This is the case whether he is treated as a career offender or not.

Based upon the Sentencing Commission's own data, the average career offender in 2005 with guidelines of 324 months to 405 months would have been sentenced to 262 months, and the same defendant sentenced in 2014 would have been sentenced to 230 months.[20]  If given an average sentence as a career offender under the current guidelines of 262-327 months, Mr. Jones would receive a sentence of 186 months, well below the guideline range of 210-262 months he would face without such a designation.[21]

Unlike Mr. Jones, many of those designated as career offenders receive below-guideline sentences.  The average sentence is significantly below the sentencing guidelines. According to the United States Sentencing Commission's report on career offenders:

> "In 2005, the average sentence imposed was 182 months of imprisonment, 19.1 percent lower than the average guideline minimum of 225 months. However, the average sentence imposed decreased at a greater rate than the average guideline minimum — the average sentence imposed of 147 months in 2014 was 29.0 percent lower than the average guideline minimum of 207 months. Thus, the anchoring effect of the guidelines for career offenders appears to be diminishing." United States Sentencing Commission, Report to Congress: Career Offender Sentencing Enhancements (2016)[22]

While the "anchoring effect of the guidelines" is diminishing, even as early as 2005 it was common practice by district judges to consider below-guidelines sentences for Career Offenders. When Mr. Jones was sentenced in 2007 and received a reduced sentence in 2008, he was given a

---

[20] 324 months x .809 = 262.116; 324 months x .71 = 230.04. *See* https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf, page 23.

[21] With offense level 34, and criminal history category VI, Mr. Jones's guideline range would be 262-327 months. 262 months x .71 (the average length of a career offender's sentence below the guideline minimum) = 186.02 months. Mr. Jones' guideline range if sentenced today would be 210-262 months, assuming an offense level of 34 and criminal history category of IV. *See* USSG Sentencing Table.

[22] https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf), page 23

sentence that was higher than most career offenders with the same offense level, in spite of the fact

that he has no history of violence or weapons offenses.  The PSR makes clear that Jones's drug

distribution never involved either violence or weapons.  It would be appropriate for this Court to

impose a lesser sentence for Mr. Jones.

The jury did not enter a finding as to the exact drug weight involved in Mr. Jones's offense.

The sentencing Court did not unequivocally and explicitly rule on the weight of drugs in the

offense.  After the objections of Mr. Jones's attorney, the Court noted

> "Regarding the drug amount, [Jones] is charged with 425 grams, and the level
> where he finds himself is for 150 grams to 500 grams. Even if the Court decided
> the testimony of witnesses have exaggerated and it was only half as much, the
> offense level would still be the same."

*See United States v. Patrick Jones*, 6:07-cr-00022(2)-ADA DKT 86 at 9-10.  At sentencing, courts

are required to rule on disputed facts or (1) determine that a ruling would be unnecessary because

it would not affect sentencing or (2) the court would not consider the disputed fact in sentencing.

*See* Fed. R. Crim. P. 32(i)(3)(B).  As drug weights drive both statutory and guideline ranges, the

Court necessarily considered the disputed drug weight in sentencing.  Therefore, the Court would

either have to rule on the dispute or conclude that the matter was immaterial to sentencing.  The

Court's comment that "even if the Court decided … the offense level would still be the same"

suggests that the Court considered a ruling unnecessary, given that it would not affect sentencing.

With the same offense level attributed to all amounts of crack cocaine between 150 and

500 grams, a difference between 212.5 grams and 425 grams of crack cocaine was immaterial in

2007 when Mr. Jones was sentenced, and in 2008 when the Fifth Circuit heard his appeal.  This

was therefore insufficient to meet the clearly erroneous standard upon review.  *See United States*

*v. Jones*, No. 07-50950 (5th Cir. April 29, 2008) (citing *United States v. Betancourt*, 422 F.3d 240,

246 (5th Cir. 2005)).  Today, however, when the upper guideline boundary falls at 280 grams of crack cocaine, such a difference would be material, and would thus require a ruling.

Mr. Jones was sentenced based upon reliance upon and considerations involving a statutory and guideline sentencing scheme that have since been revised multiple times in the interest of greater sentencing parity and fairness.  To give the drug weight finding in Mr. Jones's case the same deference as a jury verdict or an explicit, unequivocal finding by a judge at sentencing would perpetuate the effect of a sentencing scheme that both Congress and the United States Sentencing Commission felt obliged to change in order to effect justice.

Many similarly situated defendants sentenced between July 25, 2007 and present have received a substantially lower sentence than Mr. Jones's present sentence.   Perhaps most salient in this case, his co-defendant Sharon Jones, who pleaded guilty and testified against him, admitted that she was a co-distributor of the same crack cocaine, and also provided the uncharged co-conspirator Frances Whitlock with crack cocaine to sell.   For her cooperation against Patrick Jones, Sharon Jones received a sentence of probation.  Whitlock was never charged federally for her participation, in spite of her active role and lengthy criminal history, admitted by her at trial.

Many similarly situated defendants have already been granted reductions in sentence where Mr. Jones was deemed ineligible for relief: under the two additional guidelines reductions (2010 and 2014) and the original statutory reductions (2010).  Denying Mr. Jones relief under the First Step Act would perpetuate discrepancies that the Sentencing Commission and Congress have tried to rectify via prior amendments.

Undersigned counsel has consulted with AUSA Mark Frasier, who has indicated that at this time the government is opposed to motions to reduce sentence under the Fair Sentencing Act, and wishes to look into each matter individually in order to arrive at a position.

## IV.

## Conclusion

Mr. Jones respectfully requests that the Court reduce his sentence.  Counsel argues that a sentence above 210 months would be greater than necessary to afford adequate deterrence and protect the public from future criminal conduct.  Imposing a sentence between time-served and 210 months would appropriately reflect Mr. Jones's individual history and characteristics—as a defendant with three prior arrests for adult offenses (two of which were when Mr. Jones was 17) and no history of violent convictions or conduct.  Imposing such a sentence would also allow this Court the opportunity to reduce disparities of sentences between similarly situated defendants. Finally, it would also support the mandate from Congress and President Trump to reduce unnecessarily lengthy sentences for defendants like Mr. Jones.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

_____
/s/ DAVID M.C. PETERSON
504 Lavaca Street, Ste. 960
Austin, TX 78701
(512) 916-5025
(512) 916-5035 - fax
State Bar Number: CA 254498
*Attorney for Patrick Estell Jones*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of November 2019, I electronically filed the foregoing Defendant's Motion for Sentence Reduction Under Section 404 of the First Step Act with the Clerk of Court using the CM/ECF system.  A copy of this document was also served via electronic mail to Assistant U.S. Attorney Mark Frazier.

_____
 /s/ DAVID M.C. PETERSON
*Attorney for Patrick Estell Jones*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CAUSE NO. W-07-CR-022-ADA-2 |
| | § | |
| PATRICK ESTELL JONES | § | |

## O R D E R

The Court considers this case pursuant to its authority under Section 404 of the First Step Act of 2018 and Federal Rule of Criminal Procedure 43(b)(4).  Section 404 permits the Court to retroactively apply the statutory penalties modified by the Fair Sentencing Act of 2010 (FSA). *See* First Step Act, 115 Pub. L. 391, § 404, 132 Stat. 5194 (2018).  Under Section 404, Patrick Estell Jones' offense is a "covered offense" for which the Court may impose a reduced sentence. Specifically, his offense was committed before August 3, 2010, and the statutory penalties applicable to his offense were modified by the FSA.

Having considered 18 U.S.C. § 3553(a); the United States Sentencing Guidelines in an advisory capacity; and the Guidelines policy statements pursuant to the Sentencing Reform Act, the Court finds that a sentence reduction is appropriate in Jones's case.  The Court finds that a sentence of time served is sufficient but not greater than necessary in light of the sentencing objectives in § 3553(a)(2).

Accordingly, the Court hereby ORDERS as follows:

25

(1) Patrick Estell Jones's Motion for Sentence Reduction is GRANTED.

(2) Patrick Estell Jones's sentence of 360 months on Count One of the Indictment is reduced to a sentence of [210 months / 188 months / TIME SERVED];

(3) Patrick Estell Jones's Term of supervised release is reduced from eight years to six years;

(4) All other terms and provisions of the original judgment remain in effect.

(5) Any pro se motion(s) that Jones filed under Section 404 of the First Step Act prior to the date of this Order is/are dismissed as moot in light of the relief granted in this Order. The relief granted in this Order is the full relief to be granted under Section 404 of the First Step Act.

(6) A copy of this agreed order shall be transmitted to the Bureau of Prisons immediately.

SO ORDERED on this the _____ day of _____, 2019.

_____
ALAN ALBRIGHT
UNITED STATES DISTRICT JUDGE